Estate of Richard S. LEVINSON,
Plaintiff,

v.

Lewis MUCKER, et al., Defendants.

Civil Action No. 3:03CV–166–H.

United States District Court,
W.D. Kentucky,
At Louisville.

Oct. 27, 2003.

Stuart N. Pearlman, Pearlman & Associates, PSC, Teddy B. Gordon, Louisville, KY, for Plaintiff.

Michael Keith Horn, Department of Juvenile Justice, Frankfort, KY, for Defendants.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

As the Administratrix of the Richard S. Levinson Estate, Plaintiff Linda Levinson brings this action against Defendants Lewis Mucker ("Mucker"), Albert Saunders ("Saunders"), and Ralph Kelly,[1] individually and as employees of the Kentucky Department of Juvenile Justice. Plaintiff alleges that Defendants violated 42 U.S.C. § 1983, the Civil Rights Acts of 1964 and 1991, the Kentucky Civil Rights Act ("KCRA"), the Fourteenth Amendment of the U.S. Constitution, and the Kentucky State Constitution and committed outrageous conduct under state law. Defendants Mucker and Saunders have independently filed motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Having carefully

---

**1.** Lewis Mucker was the Superintendent of Westport Group Home and decedent Richard Levinson's immediate supervisor at the juvenile home. Albert Saunders supervised Mucker as a Regional Manager for the Kentucky Department of Juvenile Justice. Ralph Kelly was Commissioner of the Department of Juvenile Justice while Richard Levinson worked at Westport Group Home and ultimately approved Levinson's dismissal. Only Defendants Lewis Mucker and Albert Saunders have filed motions to dismiss.

considered both parties' arguments, the Court concludes that Plaintiff has not alleged sufficient facts to support her claims under federal law, the KCRA, or the state constitution and therefore grants Defendants' motions to dismiss as to these claims. Having dismissed the federal claims, the Court no longer has subject matter jurisdiction over this case and declines to exercise supplemental jurisdiction over the outrage claim, which the Court dismisses without prejudice.

## I.

Richard Levinson ("Levinson") worked for the Kentucky Department of Juvenile Justice ("DJJ") as a youth counselor at Westport Group Home, an alternative place of confinement for juvenile offenders. Mucker was Levinson's immediate supervisor, and Saunders supervised Mucker. *See supra* note 1. Levinson had contracted hepatitis C, and his supervisors were aware of his illness.

Levinson was suspended for five days between September 13 and 17, 2000 for failure to supervise residents properly after two youth were involved in a sex incident in May 2000. Around the time of his September 2000 suspension, Levinson was harassed by Mucker about contamination of food and silverware in the kitchen because of his illness. On January 25, 2001, the Kentucky Personnel Board overturned Levinson's suspension.[2] Levinson was also suspended in June 2000 and reprimanded on other occasions for his work performance, allegedly for his failure to supervise youth residents properly and for misconduct with residents.

In July 2001, the DJJ charged that Levinson bought pain medication from one resident and resold the pills to another resident. Levinson denied the charges, and Plaintiff alleges in her complaint that Mucker "orchestrated" these false charges.[3] On November 6, 2001, Levinson received a letter informing him of DJJ's intent to dismiss him due to the July 2001 incident, his previous suspension in June 2000, and earlier reprimands about his work performance. Levinson received a pre-termination hearing on November 15, 2001, and was fired six days later. On January 20, 2002, Levinson committed suicide. Plaintiff essentially alleges that Levinson was falsely accused of exchanging pills with residents and was thus unfairly discharged and that these events ultimately led to his suicide.[4]

2. The date on the actual board opinion is January 25, 2000, but the Court presumes the year was entered as a typographical error since all of the underlying events took place *after* January 2000.

3. Plaintiff hints that the events surrounding Levinson's dismissal appear suspicious, but she fails to allege specific facts to flesh out any of her suspicions. Plaintiff's response motions state that Mucker coerced confessions from youth residents concerning Levinson's involvement in the pill purchase, but her complaint mentions nothing about these confessions. These statements in Plaintiff's response motions are outside the complaint, and the Court will not take them into consideration. *See infra* note 7.

4. The Court lists a few facts here that it obtained from Levinson's letter of dismissal, which was attached to and cited by Plaintiff in her complaint, as well as the decision by the Kentucky Personnel Board to overturn Levinson's September 2000 suspension, which was attached to Plaintiff's response to Saunders's motion. All of the facts drawn from these other materials simply reiterated the contents of Plaintiff's allegations and served to clarify the sparse facts that Plaintiff provided in her complaint. The Sixth Circuit has permitted district courts to review attached documents to pleadings in deciding a Rule 12(b)(6) motion to dismiss when the information gleaned from these documents is referred to in the complaint and adds "nothing new" to the facts alleged in the complaint. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999); *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir.1993).

## II.

The Court may dismiss a complaint for failure to state a claim only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (internal quotation marks omitted). The Court must construe the facts in the light most favorable to the plaintiff and must assume that all facts alleged by the plaintiff are true. *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir.1998). "When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Id.* The Court, however, does not have to accept "as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). The Court will analyze each claim separately.

## III.

■ Plaintiff alleges that Defendants Mucker and Saunders violated Levinson's federal civil rights that are protected by 42 U.S.C. § 1983. In order to show a *prima facie* case under § 1983, Plaintiff must prove that: (1) Defendants were "acting under the color of state law," and (2) their conduct "deprive[d] [Plaintiff] of rights secured by federal law." *Bloch,* 156 F.3d at 677. Here, no one disputes that Mucker and Saunders were acting under color of state law. They discharged Levinson in their capacities as DJJ employees.

■ The real difficulty is Plaintiff's inability to articulate clearly the federally protected right allegedly violated. In her complaint, Plaintiff alleges a violation of Levinson's rights under the Fourteenth Amendment to the U.S. Constitution. This allegation, however, is not stated in conjunction with her § 1983 claim, and such an allegation alone would not suffi-

ciently describe a protected right. In her response to Defendant Mucker's motion to dismiss, Plaintiff states that Mucker deprived Levinson of his substantive due process rights under the Fourteenth Amendment in violation of § 1983. The Court, however, cannot find either facts in the complaint or an articulated legal theory that supports a substantive due process claim.

■ For example, the complaint charges that Levinson was falsely accused of exchanging pills with residents at Westport Group Home and was therefore unfairly discharged. But the harm that Plaintiff alleges—namely loss of employment—does not amount to a deprivation of a fundamental right. Substantive due process claims are traditionally reserved for matters concerning personal security, bodily integrity, family, marriage, and procreation. *See Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Doe v. Claiborne County,* 103 F.3d 495, 506 (6th Cir.1996); *Charles v. Baesler,* 910 F.2d 1349, 1353 (6th Cir.1990). Substantive due process protects rights "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Charles,* 910 F.2d at 1353 (internal quotation marks omitted). "[O]nly the most egregious official conduct" will be found to violate a person's right to substantive due process. *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (describing the "shocks the conscience" standard).

■ Unfair deprivation of employment is not a fundamental right rooted in "our [society's] history and social traditions." *Charles,* 910 F.2d at 1355. Rather, loss of a job for whom a person is hired at will or for a finite period of time may be "best characterized as an ordinary breach of contract" that is redressable in a cause of

action under state law. *Ramsey v. Bd. of Educ. of Whitley County,* 844 F.2d 1268, 1273 (6th Cir.1988) (dictum). In *Ramsey,* the Sixth Circuit stated that a person employed at will or in a job for a finite period of time "has a property interest in employment for the duration of the employment contract" but that the loss of "that finite interest can be compensated adequately by an ordinary breach of contract action." *Id.* at 1274 (dictum). Even if Levinson was deemed to have a property interest in his continued employment, the deprivation of this interest would be properly addressed as a procedural due process claim, which Plaintiff has not alleged. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541–43, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The Court agrees. Plaintiff does not have a substantive due process claim for the unfair termination of Levinson's job.[5]

■ Plaintiff also alleges that Defendants were responsible for Levinson's death because, at the time Levinson was fired, they knew he was taking medication for hepatitis C and depression and that he would be unable to obtain those medications without health insurance through his employment. A deprivation of the right to life is without a doubt a proper substantive due process claim. Defendants' actions, however, are too remote to connect them to Levinson's suicide. Plain-

tiff does not allege any facts that suggest Defendants knew that Levinson had suicidal tendencies or would actually commit suicide if he was fired. Mere knowledge of Levinson's need for medication to treat hepatitis C and depression does not support an inference that Defendants actually caused Levinson to commit suicide.

Plaintiff's claims under § 1983 and the Fourteenth Amendment are dismissed.

## IV.

■■ Plaintiff alleges that Defendants have violated 42 U.S.C. § 2000e–2(a)(1) of the Civil Rights Acts of 1964.[6] Under this section, an employer may not "refuse to hire or ... discharge any individual, or otherwise ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). None of the facts alleged in Plaintiff's complaint, however, suggest that Defendants harassed or suspended Levinson or terminated his employment on the basis of his race, color, religion, sex, or national origin. Furthermore, even though Plaintiff's responses assert a retaliation claim and a disability discrimination claim under the Americans with Disabilities Act ("ADA"), her complaint neither asserts a state or federal claim for unlawful retaliation or a discrimination claim under the ADA nor states any facts to support either claim.[7] Plaintiff's

---

**5.** Plaintiff does not argue and the Court cannot find a basis for a procedural due process claim.

**6.** Plaintiff specifically alleges that Defendants "are in total violation of 42 U.S.C. § 2000(e), *et seq.,* Section 703(a)(1) Civil Rights Act of 1964; the Civil Rights Act of 1991." Section 2000e encompasses the entirety of the Civil Rights Act of 1964 (as amended by the 1991 Act), and the Court presumes that Plaintiff alleges a violation of § 2000e–2(a)(1), which is the same section in the U.S.Code as § 703(a)(1) in the legislation itself.

**7.** In her responses to Defendants' motions to dismiss, Plaintiff alleges a discrimination claim based on disability under the ADA, 42 U.S.C. § 12102. While the facts in the complaint could suggest some type of discrimination based on a disability, Plaintiff does not raise any claim under the ADA, the federal statute that specifically addresses disability discrimination. The Court will not entertain a claim that is not raised in the complaint. *See Sims v. Mercy Hosp.,* 451 F.2d 171, 173 (6th Cir.1971) (per curiam) (noting that a Rule 12(b)(6) motion "is directed solely to the complaint itself"). In any event, Plaintiff does not allege facts sufficient to support a proper

federal discrimination claims are therefore dismissed.

## V.

Plaintiff alleges generally that Defendants violated the Kentucky Civil Rights Act ("KCRA"), Ky.Rev.Stat. § 344 et seq. In light of the liberal federal pleading rules,[8] the Court presumes that Plaintiff alleges a discrimination claim under Ky. Rev.Stat. § 344.040(1), which prohibits an employer from discharging or discriminating against an employee on the basis of race, color, religion, national origin, sex, age (40 and over), or disability. Plaintiff appears to allege discrimination on the basis of a disability and does not allege any facts to support a discrimination claim based on race, color, religion, national origin, sex, or age. The Court will therefore evaluate a disability discrimination claim only.

In order to establish a *prima facie* case of discrimination based on disability, Plaintiff must show three elements: (1) that Levinson had a disability as the term is defined under the KCRA; (2) that he was " 'otherwise qualified' to perform the requirements of the job, with or without reasonable accommodation"; and (3) that

he "suffered an adverse employment decision because of the disability." *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001) (interpreting KCRA disability protections consonant with ADA). The KCRA defines "disability" as "[a] physical or mental impairment that substantially limits one ... or more of the major life activities of the individual," having "[a] record of such an impairment," or "[b]eing regarded as having such an impairment." Ky.Rev.Stat. § 344.010(4). The Supreme Court recently discussed the term "disability" under the ADA in *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). In accordance with the EEOC regulations,[9] the Court found that "substantially limits" means a considerable restriction on one's ability to perform a particular task and that "major life activities" are those "that are of central importance to daily life," such as walking, seeing, or hearing. *Toyota*, 534 U.S. at 196–97, 122 S.Ct. 681; *see also Dunn v. Lear Seating Corp.*, No. 3:00–CV–518–H, 2001 WL 1685486, at *1–2 (W.D.Ky.2001) (reaching the same conclusion about meaning of "disabled" under ADA).

disability claim under the ADA. *See infra* Part V (analyzing disability claim under analogous Kentucky Civil Rights Act).

Likewise, in her responses to Defendants' motions to dismiss, Plaintiff alleges a retaliation claim. Retaliatory action is prohibited under both Title VII and the Kentucky Civil Rights Act. However, in her complaint, Plaintiff alleges none of the facts listed in her complaint to the Equal Employment Opportunity Commission ("EEOC") charging retaliation for Levinson's discharge (e.g., that Levinson previously filed a complaint with the EEOC in October 2000 alleging disability discrimination, which he later withdrew; and that his discharge in November 2001 was in retaliation for filing the EEOC complaint). Accordingly, the Court will not entertain Plaintiff's retaliation claim under either federal or state law.

8. *See Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (pleadings are construed liberally and with the goal "to do substantial justice" and give defendant "fair notice" of plaintiff's claim).

9. The EEOC regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limits" means a person is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity" when compared to the average person in the general population. *Id.* § 1630.2(j)(1).

■ Here, Levinson's hepatitis C is the asserted disability. The existence of hepatitis C, however, is not a disability as a matter of law. The specific facts supporting such a claim must first be alleged and then proven. Plaintiff fails to allege that Levinson's illness substantially inhibited his ability to perform any major life activities. The complaint does not allege that Levinson could not walk, see, hear, or perform manual tasks due to his illness or that Defendants perceived that he could not perform these major life functions. Indeed, according to the complaint, Levinson appeared to be able to perform all major life activities quite normally. Levinson's illness therefore did not make him disabled within the meaning of the KCRA. Since Plaintiff fails to show that hepatitis C is a disability, her state disability discrimination claim must fail altogether and is therefore dismissed.

## VI.

Plaintiff alleges that Defendants violated Levinson's rights under the Kentucky State Constitution. Plaintiff, however, fails to identify which rights under the state constitution have been violated and what legal mechanism she will use to vindicate Levinson's civil rights under the state constitution. The Court therefore dismisses Plaintiff's state constitutional claims.

Plaintiff alleges the same causes of action against Ralph Kelly, who was Commissioner of the Kentucky Department of Juvenile Justice while Levinson was employed at Westport Group Home. Because all other parts of the complaint fail to state a cause of action generally, it stands to reason that the complaint does not state a claim against Kelly.

■ Finally, Plaintiff alleges that Defendants have committed outrageous conduct in their actions against Levinson. The Court sees two questions to be answered under this claim: (1) whether Plaintiff is precluded from bringing her outrage claim because she has sought similar relief under the KCRA, especially in light of the fact that she is unable to recover under the statute because hepatitis C is not a disability under the law; and (2) if not, whether Plaintiff has alleged sufficient facts supporting an outrage claim to withstand a motion to dismiss. However, since the only remaining outrage claim raises distinctly state law questions, the Court elects not to exercise supplemental jurisdiction and dismisses the outrage claim without prejudice. 28 U.S.C. § 1367(c)(3); *see also Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 818 (6th Cir.1996).

The Court recognizes that it has chosen to analyze Plaintiff's state law claims under the KCRA and the state constitution and not Plaintiff's outrage claim. The Court, however, has broad discretion in choosing when to exercise supplemental jurisdiction. *Street,* 102 F.3d at 818; *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1254 (6th Cir.1996). In the interest of judicial economy, the Court has chosen to resolve the KCRA claim because it is legally and factually intimately related to Plaintiff's federal discrimination claims.[10] *See Musson Theatrical, Inc.,* 89

---

**10.** The Court acknowledges the Sixth Circuit's admonishment in *Musson Theatrical* that "there is a strong presumption in favor of dismissing supplemental [state law] claims" after all federal claims are dismissed under a Rule 12(b)(6) motion. 89 F.3d at 1255. The Court here feels, however, that the state dis-

crimination and constitutional claims are intimately connected to Plaintiff's federal discrimination and constitutional claims and that it makes more sense to decide these issues in federal court since the analysis under each claim is basically the same for both state and federal law.

F.3d at 1254 (stating that a court is not categorically barred from deciding state law claims once federal claims have been dismissed and may choose to decide state law questions depending on factors such as "judicial economy, convenience, fairness, and comity") (quoting *Carnegie–Mellon Univ.*, 484 U.S. at 350, 108 S.Ct. 614) (internal quotation marks omitted). Likewise, the Court has chosen to resolve the state constitutional claim because, in reviewing this claim and determining which facts, if any, supported it, the Court also had to analyze Plaintiff's federal constitutional claims. *See id.* By contrast, while the outrage claim is based on the same facts, it involves an entirely separate legal analysis and, as a wholly state law issue, is therefore better adjudicated at the state court level.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendants Albert Saunders and Lewis Mucker have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) the claims of Plaintiff Linda Levinson, acting as Administratrix for the Estate of Richard Levinson. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that both Defendants' motions to dismiss are GRANTED. Plaintiff's claims under federal law, the Kentucky Civil Rights Act, and the Kentucky State Constitution are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's complaint against Ralph Kelly is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's state law claim of outrage is DISMISSED WITHOUT PREJUDICE.